EMANUEL SPELLAZZI, complainant,

*v.*

MUNZIATE CAMMARATA SPALLINA (sometimes known as NAN-
ZIATA CAMMARATA) and DOMINICK SPALLINA, de-
fendants.

[Decided February 7th, 1930.]

*Messrs. Feder & Rinzler,* for the complainant.

*Mr. Alexander M. MacLeod,* for the defendants.

BENTLEY, V. C.

In 1923 the complainant was injured by working upon a building on land the title to which he charges was held by the defendant's wife in order that it might be kept beyond the reach of creditors of the husband but which was equitably the property of the defendant husband. In 1924 an award was made under the Workmen's Compensation act in favor of the complainant as compensation for such injury.

The defendant wife appears to have continued to use her maiden name after her marriage in accordance with what is said to be a custom in the part of Italy from which she emigrated to this country. The defendants are people of Italian birth who have not had the benefit of our American educational system. They, like the complainant, are people in very moderate circumstances. They appear to have eked out an existence by employment at odd jobs, the running of small

stores and perhaps employment in an occupation that has sprung up in this country within the last nine years. In 1920 the wife took title in her maiden name to a piece of property in Passaic county upon which the defendants established their residence and where they rented out a building in the nature of a garage with an apartment on the second floor that at one time at least was used as a room for the playing of billiards or pool.

From the time of the acquisition of this property the husband undoubtedly assumed the management of it, including the collection of rent and the necessary repairs. In negotiations with a bank for a loan to be secured by a mortgage upon the premises under discussion, the husband seems to have made all of the arrangements and to have signed his wife's name to two application blanks without in any way indicating that he did so as agent or attorney for her.

Sometime prior to 1917, the husband conducted a business in partnership with another man and they appear to have fallen out at or about the time mentioned, so that there was a dissolution of the firm. There has been a great deal of confused and very unsatisfactory testimony as to whether or not the husband and former partner ever completely settled up their financial differences. The impression I gain from listening to the former partner, the husband and the other witness on this point leads me to feel that it would be a most unsafe thing to predicate any judgment upon their testimony.

The complainant bases his cause upon two theories, the first being that the property which is the subject of this bill was purchased with money which belonged to the husband but the title taken in the name of the wife to defeat the claim of an existing creditor. The second theory is that the title was taken in the name of the wife although purchased with the money of the husband, not to defeat any particular creditor but to hinder or delay subsequent creditors generally. As already said, I cannot bring myself to a reliance upon the testimony of any of the witnesses concerning the alleged claim of the former partner of the husband. This seems to cut

the ground from under the feet of the complainant so far as the first theory of his bill is concerned.

As I understand the rule laid down in *Washington National Bank* v. *Beatty*, *77 N. J. Eq. 252,* a subsequent creditor can defeat a voluntary conveyance if he can prove that there was a fraudulent intent to defraud any creditor at the time the conveyance is made; but to do so he must legally prove the truth and legality of the claim of the other creditor in his suit to set aside the conveyance. That, it seems to me, the complainant has failed to do in the case at bar. The former partner, who is the only one who has testified in favor of his claim, appears to be influenced or biased against the husband and is contradicted, not only by the husband but by two other witnesses as well who have not been shown to have any interest in this case. Of course, I have not lost sight of the fact that the present transaction is not that of a conveyance by the husband to his wife because he never had title to the property conveyed to her, but it is not denied that relief would be given to the complainant if he had proved an existing indebtedness at the time she took title which had been paid for by her husband, and see *Besson* v. *Eveland, 26 N. J. Eq. 468.*

From the other aspect of the complainant's case, however, it seems to me that he must succeed. It is common knowledge that among people of the class to which these defendants belong, the wife very frequently takes charge of the family finances brought in by the husband and that title to the family property is taken in her name. This young woman attempts to testify that she paid for the property in question out of very meagre income she had received, in part, I think, for wages while employed as a factory hand, in part from moneys she earned as a nurse-maid and in part from a small inheritance (which, as I recall it, was in the neighborhood of $400) received from the estate of some relative who died in Italy. Being unable to show any corroborating proof except the former statement in the deed through which the title came to her, she was compelled by cross-examining counsel to produce her pass book for a savings account in a bank in the

city of Passaic, which shows that she opened the account in February, 1917, which has steadily grown in balance until on October 26th, 1928, it had increased to a balance in her favor in the amount of $4,211.91. On that day, which was very shortly after the first day of this final hearing, and I think within the same week, she withdrew every cent thereof, closing out the account. Furthermore, during her cross-examination she was pressed to disclose how she had made payment for the conveyance which is under attack, and when she said that the consideration was paid in cash she was asked where that cash was kept before it was delivered to her grantor, and this woman who had kept a bank account for three years to which she had constantly added up to that time without any withdrawals, replied that she kept this large sum of money, which amounted to about $1,400, in a trunk in her home. This seems to me incredible. Thrifty people of her class who come to this country at an early age and learn of our banking institutions, my experience has shown, abandon the primitive methods of keeping cash in their immediate possession and do just what this young woman was doing at that time, namely, deposit it in a bank where it is beyond the reach of fire, thieves, or other probable danger.

In addition, the bearing, demeanor, and manner of delivering their testimony stamp both of these defendants as people who do not inspire confidence. There was the familiar air of untruthfulness about them. Whenever it became necessary through the exigencies of other developments, they did not hesitate to change their testimony during the sessions of the protracted final hearing which was broken by a number of continuances from day to day, which would give them an opportunity to confer and take stock of their previous testimony. Their dealing with the wife's savings account was not such as ought to be expected, if the parties were telling the truth and relying upon an honest defense. Their hurried and surreptitious withdrawal of the entire balance of an account which had been maintained for over ten years, after cross-examining counsel had alarmed them by the search of his questions, speaks for itself. His questioning had warned them

that he was going to set afoot an inquiry which would have disclosed in this bank account sufficient moneys to have satisfied the award to the complainant if his bill was successfully prosecuted. All these badges of fraud seem to me to point to but one conclusion, namely, that the defendants were conscious of their guilt and feared the result of its discovery.

Because of these facts and circumstances I feel compelled to advise a decree in accordance with the prayer of the bill. In addition the decree should also award to the complainant the relief he seeks under the order to show cause allowed during the final hearing.